KRIS A. McLEAN
RYAN G. WELDON
Assistant U.S. Attorneys
ERIC E. NELSON
Special Assistant U.S. Attorney
U.S. Attorney's Office
105 E. Pine St., 2nd Floor
Missoula, MT 59807
Phone: (406) 542-8851
FAX:    (406) 542-1476
EMAIL:  Kris.McLean@usdoj.gov
        Ryan.Weldon@usdoj.gov
        Nelson.Eric@epa.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, | CR 16-20-GF-BMM |
|---|---|
| Plaintiff, | |
| | **OFFER OF PROOF** |
| vs. | |
| FX DRILLING COMPANY, INC., | |
| Defendant. | |

Plaintiff, United States of America, by and through its counsel of record, Kris A. McLean, Assistant U.S. Attorney for the District of Montana, hereby files its Offer of Proof.

## THE CHARGES

The Indictment charges the defendant, FX Drilling Company, Inc. with the Negligent Discharge of Oil into a Water of the United States in a Quantity That May Be Harmful in violation of 33 U.S.C. §§ 1321(b)(3), 1319(c)(1)(A) (Count I) and Failure to Immediately Notify the Appropriate Federal Agency of Discharge of Oil Into Waters of the United States in a Quantity That May Be Harmful in violation of 33 U.S.C. § 1321(b)(5) (Count II).

## PLEA AGREEMENT

There is a plea agreement in this case. This agreement calls for the defendant to plead guilty as charged in the Indictment. The defendant is also prepared to waive a Presentence Report and move immediately to sentencing at the time of the scheduled change of plea.

The United States presented any and all formal plea offers to the defendant in writing. The plea agreement entered into by the parties

2

and filed with the Court represents, in the government's view, the most favorable offer extended to the defendant. See *Missouri v. Frye*, 132 S.Ct. 1399 (2012).

## ELEMENTS OF THE CHARGE TO WHICH DEFENDANT WILL PLEAD GUILTY

In order for the defendant to be found guilty of the charge of Negligent Discharge of Oil into a Water of the United States in a Quantity That May Be Harmful in violation of 33 U.S.C. §§ 1321(b)(3), 1319(c)(1)(A) as charged in Count I of the Indictment, the United States must prove each of the following elements beyond a reasonable doubt:

**Elements**:

(1) The defendant negligently discharged oil;

(2) Into water of the United States; and

(5) The oil was in a quantity that may be harmful.

In order for the defendant to be found guilty of Failure to Immediately Notify the Appropriate Federal Agency of Discharge of Oil Into Waters of the United States in a Quantity That May Be Harmful in violation of 33 U.S.C. § 1321(b)(5) as charged in Count II of the

3

Indictment, the United States must prove each of the following elements beyond a reasonable doubt:

**Elements:**

(1)  The defendant is a corporation in charge of an onshore facility;

(2)  Oil was discharged from the defendant's onshore facility in a quantity that may be harmful;

(3)  Into a water of the United States; and

(4)  The defendant failed to immediately notify the appropriate federal agency as soon as it had knowledge of the discharge.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

The criminal investigation into this matter reveals that, on or about 10:00 a.m. on June 12, 2011, a field supervisor of defendant FX Drilling Company, Inc. conducted an inspection of an oil well field operated by the defendant located on lands within the Blackfeet Indian Reservation in Glacier County, Montana. During his inspection, the

4

field supervisor observed a release of oil and produced water coming from an underground pipeline associated with the well. The release originated from a crack in the underground pipeline. The likely cause of the crack was shifting earth under and around the well as a result of high volumes of rainfall. The crack was not intentionally caused by the defendant or any of its employees.

By about 2:00 p.m. on June 12, 2011, the defendant's employees had shut down the well. Although the employees observed oil flowing down a sloping hill from the pipeline break, the field supervisor did not appreciate the volume of oil and production water released, and failed to make efforts to determine the volume of the spill or how far the spill had traveled. Although the defendant's employees excavated and repaired the leaking underground pipe over the next several days, they never took any steps to investigate the scope and extent of oil that had been released from the pipe, or any steps to prevent its further migration down the hill and into a coulee drainage system of Cut Bank Creek, a water of the United States.

Contrary to defendant FX Drilling Company Inc.'s mistaken assumptions, the spill turned out to be extensive. Only four days later, a kayaker observed oil spilling into Cut Bank Creek, over ¾ of a mile away and downhill from the original spill point.

On July 11, 2011, a local rancher observed that the oil spill was reaching Cut Bank Creek, and reported the incident to an official at the Blackfeet Environmental Office (BEO). On July 12, 2011, BEO personnel responded to the report, visited the site, and were joined by the same FX Drilling Company, Inc. field supervisor who had originally repaired the broken oil pipeline. BEO personnel advised the field supervisor that the oil spill had reached Cut Bank Creek, and that FX Drilling Company, Inc. was legally obligated to contact the National Response Center to report the spill. By approximately 4:00p.m. on July 12, 2011, and after receiving several phone calls related to the spill, staff in the defendant's administrative office notified a manager of FX Drilling Company, Inc. of the spill.

Despite the direct instruction to the field supervisor by BEO and despite a manager of FX Drilling Company, Inc. being notified of the

6

spill, no one from FX Drilling Company Inc. ever contacted the National Response Center to report the oil spill into Cut Bank Creek. FX Drilling Company, Inc. did immediately hire an environmental cleanup company to stop the flow of oil into Cut Bank Creek and begin the cleanup process.

In order to ensure a proper response from the federal government, on July 13, 2011, a BEO official contacted the National Response Center to report the spill into Cut Bank Creek. By this time, oil had flowed from the defendant's broken oil pipeline site to Cut Bank Creek for approximately 30 days. Under the guidance of an EPA on-scene-coordinator, FX Drilling Company, Inc. was required to pay for cleanup and remove the pollution resulting from the oil spill. That cleanup and removal work was completed to EPA's satisfaction by the Fall of 2011.

//

//

//

//

DATED this 13th day of July, 2016.

                MICHAEL W. COTTER
                United States Attorney

                */s/ Kris A. McLean*
                KRIS A. MCLEAN
                Assistant U.S. Attorney
                Attorney for Plaintiff